Duane **HENNESSY**, Plaintiff
and Appellant,

v.

**GRAND FORKS SCHOOL DISTRICT #1**,
a municipal corporation, Defend-
ant and Respondent.

Civ. Nos. 8864, 8865.

Supreme Court of North Dakota.

April 12, 1973.

Garry A. Pearson, Grand Forks, for plaintiff and appellant.

Shaft, Shaft, McConn & Fisher, Grand Forks, for defendant and respondent.

TEIGEN, Judge.

Duane Hennessy (hereinafter Hennessy), a teacher in Grand Forks School District No. 1 (hereinafter school district), has appealed from two adverse judgments. In a proceeding in certiorari Hennessy sought to test the validity of the school board's refusal to renew his contract as head football coach and, in the other proceeding, he sought an injunction to enjoin the school board from refusing to renew his contract as head football coach for the ensuing school year. The two appeals were consolidated for the purpose of argument and we will decide both appeals in this opinion.

Hennessy was a teacher of Industrial Arts and the head football coach at Central High School in the school district. He was employed for two consecutive school years under separate one-year contracts. His employment for the 1971–1972 school year was governed by two contracts. The contract to teach Industrial Arts was entered into on May 25, 1971, and provided that his services were to commence on or about August 25, 1971, at a salary of $11,277. Subsequent thereto, on August 17, 1971, Hennessy accepted an assignment as head football coach at an additional salary of $750. In December 1971 Hennessy was advised that it was contemplated he would not be reassigned as head football coach for the 1972–1973 school year. He engaged an attorney who wrote a letter on January 14, 1972, to the assistant superintendent of the school in which he requested a statement of reasons, and asked for a closed hearing before the school board on the question of why Hennessy should not be reassigned as head football coach for the ensuing school year. In response to this letter the president of the school district wrote Hennessy on January 27, 1972, advising that the school board contemplated changing his assignment from head football coach to assistant football coach for the ensuing school year but that the contemplated reassignment would not affect

the renewal of his contract to teach Industrial Arts. He acknowledged Hennessy's request for a hearing but suggested that inasmuch as the school board considered the change to be only a change in his assignment as coach and not as a nonrewal of his teaching contract Section 15–47–38, N.D.C.C., did not apply. Section 15–47–38, N.D.C.C., provides that when a school board contemplates not to renew a teacher's contract it shall notify the teacher of that fact and allow the teacher, on his request, to meet with the school board prior to the making of a final decision, at which meeting the school board shall give an explanation and shall discuss with the teacher the reasons for its contemplated action. The statute provides that the meeting shall be an executive session of the board unless both the board and the teacher shall agree that it shall be public. The letter also states:

"However, as a matter of courtesy and fairness to you, the Board is willing to meet with you and explain its contemplated decision and the reasons therefor, as you have requested, and also as you have requested that it may be an executive session and your attorney may be present to represent you."

On March 13, 1972, the meeting was held as an executive session. Hennessy appeared with his attorney. No minutes were kept of this meeting. It appears that an explanation was made for the contemplated nonrenewal of Hennessy's coaching assignment and the reasons were discussed. At this executive session Hennessy, personally and by his attorney, was given the opportunity to state reasons for believing that the contemplated action should not be taken. Although no minutes were taken it appears from the record made at the trial that, following the departure of Hennessy and his attorney, the school board members present took a "straw vote". The question upon which the vote was taken is not clear. However, it resulted in a three to three tie with one member abstaining.

On March 28, 1972, the school board held its next regular meeting. Final action was taken and a resolution was adopted to reassign Hennessy as assistant football coach for the ensuing year. The school district personnel director wrote Hennessy on March 30, 1972, advising him that he had been relieved of his assignment as head football coach and asked if he would be interested in other curricular assignments. Hennessy did not respond to this letter. On April 10, 1972, the personnel director again wrote Hennessy and advised him that the school board had determined that his assignment as head football coach would not be in effect for the school year 1972–1973; that, however, the school board would tender to him a renewal of his teaching contract and offered to assign him as assistant football coach for the ensuing school term. In this letter Hennessy was also advised that, pursuant to Section 15–47–27, N.D.C.C., he would be required to accept the offer for a renewal of his teaching contract and the assignment as assistant football coach not later than May 15, 1972, and was cautioned that in the absence of an acceptance on or before that date the offer would be deemed to have been rejected by him. Hennessy was also given the alternative of accepting reappointment as a teacher without accepting the assignment as assistant football coach but could not accept the assignment as assistant football coach without also accepting the teaching contract. This offer had not been accepted nor rejected by Hennessy at the time of trial. He instituted the instant proceeding and action on or about April 12, 1972.

The trial court dismissed both cases. In the proceeding for certiorari the trial court found that the school board had pursued regularly the authority given it by law and did not exceed its jurisdiction. In the action for an injunction the trial court found that the school board afforded Hennessy all of the rights to which he was entitled under the law but that the evidence was insufficient to justify injunctive relief.

Although Hennessy, in taking this appeal, served and filed a number of specifications of error and claimed insufficiency of the evidence to support the judgments, he has consolidated these specifications in his argument and in his brief to the two following specific areas:

"A. The Court erred in holding that the appellee had power to overrule, on March 28, 1972, its vote taken at the meeting of March 13, 1972.

"B. The Court erred in holding that the appellant was not entitled to procedural due process allowing him a reasonably detailed list of the charges against him, an opportunity to confront his accusers and an opportunity to cross-examine or otherwise test his accusers."

We will consider these arguments in the order set forth above.

In support of the first specification Hennessy points to Section 15–47–38, N.D.C.C., which provides:

"1. The legislative assembly, in recognition of the value of good employer-employee relationships between school boards of this state and the teachers employed in the school systems, the need to recruit and retain qualified teachers in this state, and further in recognition of the many intangibles in evaluating the performance of individual members of the teaching profession, urges that each school board of this state ensure through formally adopted policies, that channels of communication exist between the board, supervisory personnel, and teachers employed within its school system. It is the intent of the legislative assembly that in the very sensitive area of discharge of teachers for cause prior to the expiration of the term of the teachers' contracts, or in decisions not to renew the contracts of teachers, that recognition be given by school boards to damage that can result to the professional stature and reputation of such teachers, which stature and reputation were acquired only after the expenditure of substantial time and money in obtaining the necessary qualifications for such profession and in years of practicing the profession of teaching; and that in all decisions of school boards relating to discharge or refusal to renew contracts, all actions of the board be taken with consideration and dignity, giving the maximum consideration to basic fairness and decency.

"2. The school board of any school district contemplating discharging a teacher prior to the expiration of the term of the teacher's contract, or contemplating not renewing a teacher's contract shall notify such teacher in writing of such fact at least ten days prior to the date of discharge or final date to renew the teacher's contract. Such teacher shall be informed in writing that he may request and appear at a meeting to be held by the school board prior to the final decision of such teacher's discharge or failure to renew such teacher's contract. The school board shall give an explanation and shall discuss at such meeting its reasons for the contemplated decision of the board in discharging such teacher or refusing to renew the teaching contract of the teacher. The meeting shall be an executive session of the board unless both the school board and the teacher requesting such meeting shall agree that it shall be open to other persons or the public. The teacher may be represented at the meeting by a person of his own choosing. If the teacher so requests, he shall be granted a continuance of not to exceed seven days by the board, unless for good cause otherwise shown. No cause of action for libel or slander shall lie for any statement expressed either orally or in writing at any executive session of a school board held for the purposes provided in this section."

It was pursuant to the terms of this statute that Hennessy requested the meeting which was held on March 13, 1972, as an executive session. Seven members of the nine-member school board were present and, after Hennessy and his attorney were excused, the seven members present took a vote which resulted in a three to three tie with one abstention. The exact question upon which the vote was taken is not clear as no minutes were kept of the meeting. It appears, however, that the vote was related to an administrative recommendation to reassign Hennessy as assistant football coach for the ensuing year. Hennessy argues that final action on this question was decided by the tie vote which did not carry and therefore constitutes a decision not to reassign him as assistant football coach but to rehire him as head football coach for the ensuing school year. He submits two reasons in support of his argument, both premised on the statute itself. He points out that the statute provides, in part:

"Such teacher shall be informed in writing that he may request and appear at a meeting to be held by the school board *prior to the final decision* of such teacher's discharge or failure to renew such teacher's contract." [Emphasis added.]

He interprets this sentence as requiring that the "final decision" shall be made at such meeting. He quotes another portion, which states:

"If the teacher so requests, he shall be granted a continuance of not to exceed seven days by the board, unless for good cause otherwise shown."

He construes this sentence as directing that the school board may not postpone its decision to a later meeting in the absence of a request by the teacher for a continuance. It appears that Hennessy had not made a request for a continuance. He then concludes with the argument:

"Since the action taken at the meeting of March 13, 1972 failed to discharge Hennessy and since no continuance for adjournment was allowed or permitted by the statute without his consent, further action by the board on March 28, 1972 is clearly beyond its jurisdiction and the board was not empowered to dismiss him at a later time."

We point out that this case does not involve a "discharge" or a "dismissal" of a teacher as counsel for Hennessy states in his argument. It involves the question of nonrenewal of his contract for the ensuing year and we construe counsel's argument to comply with the facts.

We do not agree with Hennessy's contentions. Under our law a teacher is not granted tenure rights nor are there any statutes defining standards for re-employment except that the teacher must hold a current teacher's certificate issued by the superintendent of public instruction. Section 15–36–11, N.D.C.C. Our law leaves the decision of whether to rehire a teacher for the ensuing year entirely to the discretion of the school board. Section 15–47–27, N.D.C.C. Under this statute, in order not to rehire a teacher all a school board need do is notify the teacher in writing, between the 15th day of February and the 15th day of April in the school year, of the board's determination not to renew the teacher's contract. However, a school board may not dismiss a teacher during the current term except for cause. Section 15–29–08(10), N.D.C.C. In that event the teacher is entitled to be informed of the charges and must be given a reasonable opportunity for a hearing thereon. Clark v. Wild Rose Special School Dist. No. 90, 47 N.D. 297, 182 N.W. 307 (1921); McWithy v. Heart River School Dist. No. 22, 75 N. D. 744, 32 N.W.2d 886 (1948).

In 1967 our legislature added the requirements provided by Section 15–47–38, N.D.C.C., quoted at length above. It is operative both for a contemplated discharge of a teacher and the contemplated nonrenewal of a teacher's contract. It provides a procedure which must be followed in ei-

ther case. This statute obviously does not provide the full procedure for the removal or discharge or dismissal of a teacher for cause during the term of the teacher's contract but adds a requirement preliminary to the nonrenewal of a teacher's contract not theretofore provided by statute. It is a preliminary step which must be taken in either case. It does not provide for a hearing and clearly does not envision an evidentiary proceeding.

■ A school board is the governmental body of a school district. Section 15–29–08, N.D.C.C. The board and the district are supported by and expend public funds. Thus the meetings of the board, as provided for under Section 15–29–02, N.D.C. C., are required to be open to the public in accordance with the provisions of Section 44–04–19, N.D.C.C., which provides as follows:

"Except as otherwise specifically provided by law, all meetings of public or governmental bodies, boards, bureaus, commissions or agencies of the state or any political subdivision of the state, or organizations or agencies supported in whole or in part by public funds, or expending public funds, shall be open to the public."

Section 15–47–38, N.D.C.C., specifically provides that the meeting shall be an executive session of the board unless both the school board and the teacher requesting such meeting shall agree that it shall be open to other persons or the public. This section allows the teacher to be represented at the meeting by a person of his own choosing. For the purpose of this meeting the statute provides an exception to Section 44–04–19, N.D.C.C. According to Section 15–47–38, N.D.C.C., the purpose of the meeting is to keep the channels of communication open between the school board and the teachers of the school system, and to accomplish this purpose the statute admonishes the school board to give recognition to the damage that can result to the professional stature and reputation of a teacher as a result of a discharge or nonrenewal of a contract and directs that school board action in this sensitive area shall be taken with consideration and dignity, giving maximum consideration to basic fairness and decency. The statute contemplates an informal meeting at which the school board "shall give an explanation and shall discuss * * * its reasons for the contemplated decision." It encourages the members of the school board and the teacher, freely, openly and without fear of being subjected to an action for libel or slander, to make any statement either orally or in writing. The statute does not envision a hearing at which witnesses may testify and therefore does not comport with the procedural requirements of Clark v. Wild Rose Special School Dist. No. 90, *supra*, which holds:

"* * * it is prerequisite to a valid removal [for cause during the contract term] that the teacher be informed of the charges and be given a reasonable opportunity for a hearing thereon." 182 N.W. 307.

■ Section 15–47–38, N.D.C.C., treats dismissals and nonrenewals alike and we conclude that this section calls only for an informational meeting to permit the teacher to learn why the school board "contemplates" a discharge or nonrenewal and for the school board to hear any countervailing argument the teacher wishes to submit, either at that time or, if the teacher so requests, at a continuance of the executive session of not to exceed seven days unless for good cause shown. The statute does not anticipate that the school board will make a formal decision at the executive session but the school board may continue to "contemplate" the nonrenewal or the discharge in light of what has been learned. If a nonrenewal of the teacher's contract is contemplated, the board must reach its decision not to renew not later

than April 15, as fixed by Section 15–47–27, N.D.C.C. This statute requires that in the event the school board decides not to renew a teacher's contract for the ensuing school year the teacher must be notified in writing to that effect not later than April 15 in the school year in which he has been employed to teach, and failure to give such written notice on or before that date constitutes an offer to renew the contract for the ensuing school year under the same terms and conditions as the contract for the then current year.

■ For the reasons set forth above we find that Section 15–47–38, N.D.C.C., does not contemplate a decision-making meeting by the school board. Therefore the question upon which the vote was taken, and the vote itself, are unimportant to this decision. A determination by the school board not to renew a teacher's contract must be made at a meeting which is open to the public in conformity with the requirements of Section 44–04–19, N.D.C. C. The meeting held on March 28, 1972, was a regular meeting at which the school board considered the question of whether it should renew Hennessy's contract as head football coach for the ensuing year in light of what it had learned at its March 13 executive session. We find it had jurisdiction to determine this question at such meeting. In this State certiorari will lie only to review acts in excess of jurisdiction. Section 32–33–01, N.D.C.C.; City of Fargo v. Annexation Review Commission, 123 N.W.2d 281 (N.D.1963).

In view of our finding that the school board had jurisdiction, we affirm the trial court's judgment dismissing the certiorari proceeding.

Lastly, Hennessy specifies that the trial court erred in holding that he was not entitled to be accorded procedural due process allowing him a reasonably detailed list of the charges, an opportunity to confront his accusers, and an opportunity to cross-examine.

■ In considering this argument we must keep in mind that we are concerned here only with a decision not to renew Hennessy's contract to coach football as head football coach for the ensuing year. We are not concerned with a dismissal, a discharge, or a removal of Hennessy from his existing contract. Hennessy had no tenure rights and his contract would expire at the end of the current school year. Hennessy makes no claim to any property right entitling him to a renewal of the contract. His claim is based on the provisions of Section 15–47–38, N.D.C.C., quoted at length earlier in this opinion. He interprets this section as granting him procedural due process rights. We do not agree. The school board complied with the statute. It gave Hennessy an "explanation" and discussed "its reasons" for the contemplated decision not to renew his contract as head football coach for the ensuing school year at the executive session held on March 13, 1972. There were no charges preferred nor was it necessary to prefer charges against him under this or any other statute because of a contemplation not to renew his contract. This State has no statute which requires that the school board must have cause to refuse to renew a teacher's contract. Under our statutes this question is left to the discretion of the school board. Section 15–47–38, N.D.C.C., adopted in 1967, does not impose this burden upon the school board nor does the statute grant the teacher tenure requiring that the school board must have cause in order not to renew a teacher's contract. We find that this conclusion as to the legislative intent of Section 15–47–38, N.D.C.C., is strengthened when we consider that, at the 1971 term of our legislature, Senate Bill No. 2333 was introduced. A reading of this bill discloses an intent on the part of its sponsors to require a full dress, due process adversary proceeding and proof of cause as a prerequisite to a determination by the school board not to renew a teacher's contract. The bill, as introduced, was rejected by that legislature.

Hennessy has brought to our attention two recent decisions of the United States Supreme Court, namely, Board of Regents of State Colleges v. Roth, 408 U. S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548, and Perry v. Sindermann, 408 U.S. 593, 92 S. Ct. 2694, 33 L.Ed.2d 570. Both of these cases were decided in June 1972. In *Roth* the Supreme Court held that the Fourteenth Amendment does not require opportunity for a hearing prior to the nonrenewal of a nontenured state teacher's contract unless he can show that the nonrenewal deprived him of an interest in "liberty" or that he had a "property" interest in continued employment. It also held in that case that the stigma or disability foreclosing other employment is not tantamount to a deprivation of "liberty" and that where the contract of employment under the school rules or policy do not secure for the teacher an interest in re-employment or create any legitimate claim to re-employment, such teacher does not have a property interest protected by procedural due process. In *Sindermann* the court held that the teacher who had been employed for a number of years at the same institution should be permitted to show that, while no explicit tenure system existed, a de facto tenure system did exist, and affirmed the judgment of the court of appeals, remanding the case for a full hearing on the contested fact issue on this question. The Supreme Court held that if such proof establishes a de facto tenure right it would obligate the school board to afford a teacher a procedural due process hearing.

On the basis of the evidence before us in these cases we find that the Fourteenth Amendment due process guaranties are not applicable, that the school board acted within the authority granted it by law, and that the trial court did not err.

For the reasons aforesaid we affirm both judgments.

STRUTZ, C. J., and ERICKSTAD, PAULSON and KNUDSON, JJ., concur.