**Dolores BUHR, Appellant,**

v.

**BUFFALO PUBLIC SCHOOL DISTRICT NO. 38 et al., Appellees.**

**No. 73–1851.**

United States Court of Appeals, Eighth Circuit.

Submitted May 13, 1974.

Decided Dec. 31, 1974.

Rehearing and Rehearing En Banc Denied Feb. 13, 1975.

David Rubin, Washington, D. C., for appellant.

John D. Kelly, Wattam, Vogel, Vogel & Peterson, Fargo, N. D., for appellees.

Before GIBSON, Chief Judge, VAN OOSTERHOUT, Senior Circuit Judge, and WEBSTER, Circuit Judge.

WEBSTER, Circuit Judge.

In this case we are asked to review the termination of employment of Dolores Buhr, a fifth grade teacher in the Buffalo Public School District No. 38 in North Dakota. Ms. Buhr had been a nontenured teacher for seven years,[1] and each year her employment contract had been presented to the school board for renewal. In March, 1973, the school board notified her of its contemplated nonrenewal of her contract. This notification contained no reasons for the proposed discharge but indicated, as required by state law, that she could appear at a meeting of the board to discuss the matter.[2] She alleges that, at that closed meeting with the board, she was informed that the reasons for the contemplated action were the charges by certain persons that "she was the cause of certain emotional and nervous stress and tension on the part of some of the students."

Nine days later, Ms. Buhr was notified by letter that the school board had reached a decision not to renew her contract. She thereupon filed a civil rights action pursuant to 42 U.S.C. § 1983,

1. Under applicable North Dakota law, there is no formal tenure system; each public school teacher is employed under a yearly contract which the school district may or may not renew. N.D.C.C. § 15–47–27 (1971); N.D.C.C. § 15–47–38 (1971). See Dathe v. Wildrose School Dist. No. 91, 217 N.W.2d 781 (N.D.1974); Hennessy v. Grand Forks School Dist. No. 1, 206 N.W.2d 876 (N.D.1973).

2. North Dakota law, applicable at the time of the nonrenewal, N.D.C.C. § 15–47–38(2) (1971), provided:

The school board of any school district contemplating discharging a teacher prior to the expiration of the term of the teacher's contract, or contemplating not renewing a teacher's contract shall notify such teacher in writing of such fact at least ten days prior to the date of discharge or final date to renew the teacher's contract. Such teacher shall be informed in writing that he may request and appear at a meeting to be held by the school board prior to the final decision of such teacher's discharge or failure to renew such teacher's contract. The school board shall give an explanation and shall discuss at such meeting its reasons for the contemplated decision of the board in discharging such teacher or refusing to renew the teaching contract of the teacher. The meeting shall be an executive session of the board unless both the school board and the teacher requesting such meeting shall agree that it shall be open to other persons or the public. The teacher may be represented at the meeting by a person of his own choosing. If the teacher so requests, he shall be granted a continuance of not to exceed seven days by the board, unless for good cause otherwise shown. No cause of action for libel or slander shall lie for any statement expressed either orally or in writing at any executive session of a school board held for the purposes provided in this section.

The statute was amended in 1973. The relevant provisions of the amendment, however, do not differ substantially from those in the prior version which governs Ms. Buhr's case. See N.D.C.C. § 15–47–38(5) (Supp. 1973). According to the Constitution of North Dakota, all acts become effective on July 1 following the close of the legislative session unless an emergency is declared. N.D.Const. § 67.

alleging violations of her Fourteenth Amendment rights to both procedural and substantive due process of law.[3] The defendant school district and school officials moved for summary judgment dismissing the complaint, which was granted by the Honorable Paul Benson, whose supporting memorandum of decision appears at 364 F.Supp. 1225 (D.N.D. 1973). We affirm for the following reasons:

### 1. Procedural Due Process Claims.

The pivotal cases in the resolution of Ms. Buhr's procedural due process claims are Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) [hereinafter *Roth*], and Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) [hereinafter *Sindermann*]. Equally significant are the Supreme Court's recent statements in Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (opinion of Rehnquist, J., in which Burger, C. J., and Stewart, J., joined).

■■■ Under *Roth* and *Sindermann*, a state or public school teacher who is not formally tenured is entitled to procedural due process of law upon termination *only if* that termination deprives the teacher of an interest in liberty or an interest in property. Deprivation of an interest in liberty occurs where nonretention of the teacher imposes upon him a stigma or other disability foreclosing his future employment opportunities or resulting in significant damage to his standing and associations in the community. Adequate notice of the reasons for nonretention and an opportunity to rebut those charges are required under such circumstances. *Roth, supra,* 408 U.S. at 573, 92 S.Ct. 2701. Procedural due process is likewise required where the teacher whose dismissal is being contemplated, while not formally tenured, has held his job pursuant to a de facto tenure policy under which he had a legitimate claim to continued employment and thus

a "property interest" therein. *Roth, supra,* 408 U.S. at 576–578, 92 S.Ct. 2701; *Sindermann, supra,* 408 U.S. at 599–603, 92 S.Ct. 2694.

Invoking this analytical framework, Ms. Buhr first contends that her nonrenewal for the reasons cited at the executive meeting of the school board deprived her of an interest in liberty by foreclosing future employment opportunities in her chosen profession. She argues that being named as the cause of certain students' nervous tensions not only imposed a stigma on her professional record but also injured her standing in the small community in which she lives.

■■■ We cannot accept this argument under the factual circumstances of this particular case. Clearly, nonrenewal standing alone does not constitute the deprivation of an interest in liberty. *Roth, supra,* 408 U.S. at 574 n. 13, 92 S.Ct. 2701; Arnett v. Kennedy, *supra,* 416 U.S. at 157, 94 S.Ct. 1633; Calvin v. Rupp, 471 F.2d 1346 (8th Cir. 1973). On the other hand, where reasons for nonrenewal are announced publicly or are incorporated into a record made available to prospective employers, such reasons may indeed affect the dischargee's chances of securing another job. *See* Wellner v. Minnesota State Junior College Board, 487 F.2d 153 (8th Cir. 1973); *cf.* Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). In the instant case, the reasons for nonrenewal were never publicized. Ms. Buhr was confidentially informed of the reasons only upon her request and then only at a closed meeting of the school board. The confidential nature of these charges was respected even during the trial court proceedings, and we note that Judge Benson made no explicit reference thereto in his summary judgment order and memorandum. *See* 364 F.Supp. at 1228 n. 1. We fail to discover any suggestion in the undisputed facts contained in the record that the defendants prejudiced Ms. Buhr's ability to secure another teaching position.

**3.** For the long list of cases in which we have been confronted with similar issues, see Fra-

zier v. Curators of Univ. of Mo., 495 F.2d 1149, 1150 n. 1 (8th Cir. 1974).

Nor can we accept Ms. Buhr's contention that she was entitled to procedural due process as a result of her "property interest" in continued employment. *See Roth, supra; Sindermann, supra.* North Dakota teachers do not work under any formal tenure system. Dathe v. Wildrose School District No. 91, 217 N.W.2d 781 (N.D.1974); Hennessy v. Grand Forks School District No. 1, 206 N.W.2d 876 (N.D.1973). Appellant concedes this point but argues that the state affords its teachers continuous job security through statutory provisions recognizing "the need to * * * retain qualified teachers", N.D.C.C. § 15–47–38(1) (1971), and guaranteeing automatic renewal of each teacher's yearly contract absent affirmative action by the school board, N.D.C.C. § 15–47–27 (1971). Yet it is clear that those same statutory provisions, which outline the procedures for terminating a teacher's employment, do not provide for full-dress procedural due process. Dathe v. Wildrose School District No. 91, *supra;* Hennessy v. Grand Forks School District No. 1, *supra.* Where, as here, the only "grant of a substantive right [to continued employment] is inextricably intertwined with the limitations on the procedures which are to be employed in determining that right, a litigant [challenging the termination of employment] must take the bitter with the sweet." Arnett v. Kennedy, *supra,* 416 U.S. at 153–154, 94 S.Ct. at 1644. Because Ms. Buhr's only "property interest" in re-employment "was itself conditioned by the procedural limitations which had accompanied the grant of that interest," 416 U.S. at 155, 94 S.Ct. at 1645, there is no merit to her claimed right to full procedural due process.

2. *Substantive Due Process Claims.*

Ms. Buhr's final contention, separate and apart from her procedural due process claims, is that she was denied substantive due process of law because the reasons cited by the school board for her nonretention were totally unsupported by factual evidence. For purposes of review, "[w]e look at the record on summary judgment in the light most favorable to * * * the party opposing the motion," Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962), and "the inferences to be drawn from the underlying facts contained in [the record] must be viewed in the light most favorable to the party opposing the motion," United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Assuming, therefore, for purposes of this appeal, that the reasons for Ms. Buhr's nonretention did indeed lack factual support, we proceed to an analysis of her constitutional claims.

"The claim that a person is entitled to 'substantive due process' means * * * that state action which deprives him of life, liberty, or property must have a rational basis—that is to say, the reason for the deprivation may not be so inadequate that the judiciary will characterize it as 'arbitrary.' " Jeffries v. Turkey Run Consolidated School District, 492 F.2d 1, 3–4 (7th Cir. 1974). The concept of substantive due process, so defined, has had a long and tortuous history in the federal courts. As was observed in North Dakota State Board of Pharmacy v. Snyder's Drug Stores, Inc., 414 U.S. 156, 94 S.Ct. 407, 38 L.Ed.2d 379 (1973), the United States Supreme Court once expressly espoused the concept and actively employed it to strike down state action "which a majority of the Court deemed unwise," 414 U.S. at 164, 94 S.Ct. at 412. *See, e. g.,* Coppage v. Kansas, 236 U.S. 1, 35 S.Ct. 240, 59 L.Ed. 441 (1915); Adair v. United States, 208 U.S. 161, 28 S.Ct. 277, 52 L.Ed. 436 (1908); Lochner v. New York, 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905). Although analysis of recent opinions has led some commentators to conclude that substantive due process still plays a significant, albeit tacit, role in the Supreme Court's decisions, *see* Tribe, Foreword: Toward a Model of Roles in the Due Process of Life and Law, 87 Harv.L.Rev. 1 (1973); Epstein, Substantive Due Process by Any Other Name: The Abortion Cases, 1973 Sup.Ct.Rev. 159; *cf.* Note, The Irre-

buttable Presumption Doctrine in the Supreme Court, 87 Harv.L.Rev. 1534 (1974), the Court itself has expressly repudiated the use of substantive due process as a vehicle for intervening in choices properly left within the discretion of state officials. *E. g.,* North Dakota State Board of Pharmacy v. Snyder's Drug Stores, Inc., *supra;* Ferguson v. Skrupa, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963); *cf.* San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 53–55, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).

Within the Eighth Circuit substantive due process claims have spawned two distinct views expressed in our opinions. The first would condition the right to federal judicial review of allegedly arbitrary state action upon a showing that a specific constitutional right has been infringed, such as deprivation of freedom of speech, racial discrimination or denial of procedural due process rights where liberty or property interests are at stake.[4] The other line of cases seems to suggest that substantive due process is a specific constitutional right in itself, cognizable under 42 U.S.C. § 1983 and violated whenever a state acts to the detriment of an individual in a manner that is arbitrary or capricious.[5]

4. Included herein are Frazier v. Curators of Univ. of Mo., 495 F.2d 1149, 1153 (8th Cir. 1974) ("a nontenured instructor may be dismissed provided the dismissal is not in fact based upon some constitutionally impermissible ground"); Scheelhaase v. Woodbury Central Community School Dist., 488 F.2d 237, 242 (8th Cir. 1973), cert. denied, 417 U.S. 969, 94 S.Ct. 3173, 41 L.Ed.2d 1140 (1974) ("in the absence of a tenure statute a local school board has the right to decline to employ or re-employ any teacher for any reason or for no reason as long as such a decision is not violative of a specific constitutional right"); Harnett v. Ulett, 466 F.2d 113, 117 (8th Cir. 1972) ("absent contractual, legislative or constitutional provision on the subject, the power of removal is incident to the power of appointment, and government employment can be revoked at the will of the appointing officer"); Tims v. Board of Educ., 452 F.2d 551, 552 (8th Cir. 1971) (" 'a school district has the right to discharge an employee for good reason, bad reason, or no reason, absent discrimination' * * * [but such] a decision * * * must not rest on grounds that are violative of constitutional or legal rights"); Freeman v. Gould Special School Dist., 405 F.2d 1153, 1159 (8th Cir.), cert. denied, 396 U.S. 843, 90 S.Ct. 61, 24 L.Ed.2d 93 (1969) ("[a]bsent [tenure] a public employee has no right to continued public employment, except insofar as he may not be dismissed or failed to be rehired for impermissible constitutional reasons, such as race, religion, or the assertion of rights guaranteed by law or the Constitution").

*Accord,* Strickland v. Inlow, 485 F.2d 186, 192 (1973), cert. granted, 416 U.S. 935, 94 S.Ct. 1932, 40 L.Ed.2d 285 (1974) (Mehaffy, C. J., joined by Stephenson and Webster, JJ., dissenting from denial of the petition for rehearing en banc) ("substantive reach of the due process clause on the public school campus is limited to the protection of specifically identifiable federal constitutional rights").

5. Included herein are Strickland v. Inlow, 485 F.2d 186, 190 (8th Cir. 1973), cert. granted, 416 U.S. 935, 94 S.Ct. 1932, 40 L.Ed.2d 285 (1974) ("[suspended] students denied substantive due process [due to lack of evidence]"); Fisher v. Snyder, 476 F.2d 375, 377 (8th Cir. 1973) ("judgment [of school board] * * * must be afforded judicial deference 'so long as the board does not act unreasonably, arbitrarily, capriciously, or unlawfully' "); McConnell v. Anderson, 451 F.2d 193, 196 (8th Cir. 1971), cert. denied, 405 U.S. 1046, 92 S.Ct. 1312, 31 L.Ed.2d 588 (1972) ("court is * * * limited to deciding whether the administrative action was arbitrary, unreasonable or capricious"); Smith v. Board of Educ., 365 F.2d 770, 782 (8th Cir. 1966) (school board free "so long as the board does not act unreasonably, arbitrarily, capriciously, or unlawfully"); Brooks v. School Dist. of Moberly, 267 F.2d 733, 740 (8th Cir.), cert. denied, 361 U.S. 894, 80 S.Ct. 196, 4 L.Ed.2d 151 (1959) ("plaintiffs are in no position to complain at least so long as the action of the Board is not unreasonable, arbitrary, or motivated by racial consideration").

*Accord,* Scheelhaase v. Woodbury Central Community School Dist., 488 F.2d 237, 244 (8th Cir. 1973), cert. denied, 417 U.S. 969, 94 S.Ct. 3173, 41 L.Ed.2d 1140 (1974) (Bright, J., concurring) ("the concept of substantive due process is not wholly alien to the administration of public schools [but] * * *. appellee has not shown the action of the Board to have been arbitrary and capricious"); Freeman v. Gould Special School Dist., 405 F.2d 1153, 1167 n. 9 (8th Cir.), cert. denied, 396 U.S. 843, 90 S.Ct. 61, 24 L.Ed.2d 93 (1969) (Lay, J., dissenting) ("if there exists no evidentiary support to the charges * * *, a claim for relief is properly stated under 42 U.S.C. § 1983").

■ Having carefully considered both lines of cases within this Circuit, as well as authorities from other jurisdictions, we conclude that under the facts of this case Ms. Buhr is not entitled to relief. Of primary importance is the fact that Ms. Buhr had no right to *procedural* due process. Since North Dakota law provides only that she be told the reasons for her termination but does not entitle her to a full-dress hearing in order to rebut those "charges," we could scarcely overturn the school board's decision on insufficiency of the evidence grounds. Indeed, although North Dakota law gave her the right to learn the reasons for her nonretention, *see supra,* her employment could have been terminated for no reason at all without offending the Constitution. *Roth, supra*; Frazier v. Curators of the University of Missouri, 495 F.2d 1149 (8th Cir. 1974); Scheelhaase v. Woodbury Central Community School District, 488 F.2d 237 (8th Cir. 1973), cert. denied, 417 U.S. 969, 94 S.Ct. 3173, 41 L.Ed.2d 1140 (1974); Freeman v. Gould Special School District, 405 F.2d 1153 (8th Cir.), cert. denied, 396 U.S. 843, 90 S.Ct. 61, 24 L.Ed.2d 93 (1969). Without wishing to encourage school boards to retreat behind a veil of silence in such situations, we must conclude that where a teacher can constitutionally be dismissed for no reason, he or she can be dismissed for reasons unsupported by factual evidence. In other words, to the extent that our cases recognize a constitutional right to *substantive* due process, that right, as expressed by the Seventh Circuit, "is no greater than the right to procedural due process." Jeffries v. Turkey Run Consolidated School District, *supra,* 492 F.2d at 4.

In a well-reasoned opinion by Judge Stevens, the Seventh Circuit analyzed the claim of an untenured elementary school teacher in Indiana that the reasons for her discharge, as given, were illogical or untrue and that the final decision itself was illogical and lacking in reason. The court observed that, as an untenured teacher with no claim of a constitutionally protected "property in-

terest" or any impairment of her "liberty," she had no constitutional right to a fair hearing or to a statement of the reasons for her discharge. Thus, the fact that the school board voluntarily communicated such information to her was "not in itself sufficient to create a federal right that does not otherwise exist." 492 F.2d at 3. The court then rejected the argument that the discharge was impermissibly arbitrary and capricious, holding that the absence of either a property or liberty interest was as fatal to the substantive as it was to the procedural due process claim. Jeffries v. Turkey Run Consolidated School District, *supra.*

We adopt the reasoning of the Seventh Circuit, and on this basis our post-*Roth* and *Sindermann* cases supporting a right to federal judicial review of school board actions which are arbitrary and capricious, note 5 *supra,* can readily be reconciled with the main line of our decisions, note 4 *supra.*

In Strickland v. Inlow, 485 F.2d 186 (8th Cir. 1973), cert. granted, 416 U.S. 935, 94 S.Ct. 1932, 40 L.Ed.2d 285 (1974), we held that a group of Arkansas students had been denied substantive due process when they were suspended from school for "spiking the punch" under a regulation which prohibited the "use of intoxicating beverages or possession of same [at school] or at a school sponsored activity." Thus, while in *Strickland* we did not expressly determine whether the requirement of procedural due process had been satisfied, we first held that the students were entitled to procedural due process under our interpretation of the school regulation before passing on to a consideration of their substantive due process rights. We then held that the absence of any evidence that the beverage was "intoxicating" made the suspension a denial of substantive due process. However, we have never held lack of any evidence (substance of due process) to be grounds for reversing the action of a state agency when the right to a procedural due process hearing was not first shown to exist.[6]

---

6. We stated in *Strickland* that due process was required as a result of the severity of the

penalty imposed. 485 F.2d at 190. Further, the regulation authorized suspension of stu-

In Fisher v. Snyder, 476 F.2d 375 (8th Cir. 1973), the complaining teacher had in fact been given a hearing required by Nebraska law. The grounds for discharge, that her behavior displayed "a strong potential of sexual misconduct," were shown to be nothing more than "subtle implication and innuendo." 476 F.2d at 377. This reasoning is consistent with those cases requiring procedural due process as a result of the "stigma" imposed on an individual as the result of government or agency action. *Roth, supra,* 408 U.S. at 573, 92 S.Ct. 2701; Wisconsin v. Constantineau, *supra. See also* Wellner v. Minnesota State Junior College Board, *supra. Fisher* should not be considered authority in this Circuit, however, for the assertion of substantive due process claims where procedural due process rights would not first be recognized.

 We think this analysis provides a rational view of our holdings in public school due process cases decided after the Supreme Court's definitive rulings in *Roth* and *Sindermann.*[7] Where procedural due process is required, the state agency must pay attention to the evidence adduced and act rationally upon it. On the other hand, we will not inquire into such claims unless a right to procedural due process has first been demonstrated or there has been identified to us some other federally protected right warranting our intervention in school board affairs.[8]

 Since an evidentiary hearing was not required as a part of the decision-making process, it follows that unpublished reasons for termination, given to Ms. Buhr in confidence, need not be

dents who were "found to be guilty" of the offense in question, thus intimating some form of evidentiary hearing.

7. Recent cases arising in other contexts are consistent with this approach. In Wright v. Arkansas Activities Association, 501 F.2d 25 (8th Cir. 1974), plaintiff challenged under 42 U.S.C. § 1983 a disciplinary ruling of the defendant association. As our opinion in that case makes clear, the defendant's interference with plaintiff's coaching contract with a local school district (a "property interest") was sufficient to support our consideration of both substantive and procedural due process

supported by any evidence. No independent federally protected right has been disclosed. A claim of ·total insufficiency of evidence, disembodied and cast adrift from procedural due process rights, is not a claim to be addressed in federal court. *See* Jeffries v. Turkey Run Consolidated School District, *supra.*

Affirmed.

**ORDER ON PETITIONER'S PETITION FOR REHEARING AND SUGGESTION OF REHEARING EN BANC**

Petitioner's petition for rehearing is denied.

We wish to make clear that our holding in this case is bottomed upon our express conclusion that Ms. Buhr possessed neither an interest in liberty nor *in property* which entitled her to procedural due process. Our quotation from Justice Rehnquist's plurality opinion in Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), was not intended to intimate that we thought there was any grant by the legislature of a property interest under state law.

Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). *See* Cusumano v. Ratchford, 507 F.2d 980 (8th Cir. 1974). As we observed in our opinion, North Dakota teachers do not work under any formal tenure sys-

claims. And in Wilwording v. Swenson, 502 F.2d 844 (1974), wherein we remanded for an evidentiary hearing an inmate's claim of denial of substantive and procedural due process in a prison's disciplinary action, an adequate interest in liberty was at stake to support such review.

8. The burden is on the plaintiff to demonstrate that the termination was for an impermissible reason. *See* Calvin v. Rupp, 471 F.2d 1346 (8th Cir. 1973); Wilson v. Pleasant Hill School Dist., 465 F.2d 1366 (8th Cir. 1972).

tem. Dathe v. Wildrose School District No. 91, 217 N.W.2d 781 (N.D.1974); Hennessy v. Grand Forks School District No. 1, 206 N.W.2d 876 (N.D.1973). Appellant concedes this point but argues that the state affords its teachers continuous job security through statutory provisions recognizing "the need to * * * retain qualified teachers," N.D.C.C. § 15–47–38(1) (1971), and guaranteeing automatic renewal of each teacher's yearly contract absent affirmative action by the school board, N.D.C.C. § 15–47–27 (1971). The Supreme Court of North Dakota, however, has squarely held that the state statutes do not confer "property interests" to public school teachers. Dathe v. Wildrose School District No. 91, *supra,* 217 N.W.2d at 786–87; Hennessy v. Grand Forks School District No. 1, *supra,* 206 N.W.2d at 884.

While holding that these statutory sections therefore do not confer property interests, we also observe that claimants under such sections are properly entitled to no due process, substantive or procedural, arising from the United States Constitution and to no more procedural protection than the North Dakota statute itself 'provides and which was in fact given in this case.