**Kellen CHURCHWELL, Plaintiff,**

v.

**UNITED STATES of America et al., Defendants.**

**Civ. No. 75–1044.**

United States District Court,
D. South Dakota N. D.

June 7, 1976.

Anita M. Remerowski, Terry L. Pechota, Mission, S. D., for plaintiff Joan Lowy, National Employment Law Project, New York City, of counsel.

Peter J. Horner, Asst. U. S. Atty., Sioux Falls, S. D., for defendants.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

This action is before the Court on cross-motions for summary judgment. Plaintiff, Kellen Churchwell, is a registered nurse who has worked fourteen years in the medical profession. On July 7, 1974, Churchwell received a career-conditional appointment to the position of nurse in the Public Health Service Hospital in Sisseton, South Dakota. On January 5, 1975, she was reassigned to the Public Health Service Indian Hospital in Rosebud, South Dakota. By letter of May 5, 1975, the Area Director of the Indian Health Service notified plaintiff that effective May 23, 1975, her employment was terminated. The termination came two months before plaintiff completed her one year probationary period.

The letter contained a list of alleged job deficiencies which included a charge of "irregularities in the inventory of controlled drugs." Pursuant to Civil Service Commission regulations a probationary employee has very limited administrative appeal rights. Only when the termination is based on marital status, partisan political reasons not required by law, discrimination because of race, color, religion, sex, national origin or improper discrimination because of physical handicap will the Commission entertain an appeal. 5 C.F.R. Sec. 315.806 (1976). None of these jurisdictional prerequisites applied to Churchwell's termination. Plaintiff did not appeal as provided above but did request a hearing on the merits. Her request was denied on the ground that the rules and regulations of the United States Civil Service Commission and the United States Department of Health, Education and Welfare do not permit a hearing for probationary employees terminated for reasons other than those found in 5 C.F.R. Sec. 315.806.

Plaintiff has sought new employment since her termination. However, her efforts have not been successful allegedly because her former Public Health Service employers released to prospective employers the information which resulted in her termination. The complaint charges the defendants with violating plaintiff's rights to due process of law as secured by the Fifth Amendment to the Constitution. The alleged violations include failure to provide a full evidentiary hearing prior to termination and dissemination of serious allegations which plaintiff has been denied the opportunity to refute. Churchwell seeks reinstatement in her job, back pay plus interest for the period of the termination, a full evidentiary hearing on the merits of her termination and $100,000 in compensatory and punitive damages. The United States has moved to dismiss and in the alternative for summary judgment on three grounds:

1) The amended complaint fails to state a claim upon which relief may be granted,

2) Plaintiff has failed to exhaust administrative remedies prescribed by 5 C.F.R. Sec. 315.806 (1976), and,

3) Plaintiff does not state a cause of action in that she fails to allege pursuance of remedies under the Privacy Act of 1974, 5 U.S.C. Sec. 552, (sic) and therefore has not exhausted administrative remedies.

Jurisdiction has been invoked pursuant to 28 U.S.C. Secs. 1331, 1361 and 5 U.S.C. Sec. 706 (1970).

The Court has received briefs and affidavits from the parties and will treat this as a motion for summary judgment. The Court is cognizant of the statement of the Eighth Circuit in *Ozark Milling Co. v. Allied Mills,* 480 F.2d 1014 (8th Cir. 1973), where it was noted that summary judgment

> is an extreme remedy, one which is not to be entered unless the movant has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernable circumstances.

*Allied Mills, supra,* at 1015. *Accord, Saal v. Mielke,* 492 F.2d 1184, 1185–86 (8th Cir. 1974); *Luick v. Graybar Electric Co.,* 473 F.2d 1360, 1362–63 (8th Cir. 1973).

■ Prior to embarking upon a discussion of the Constitutional questions, it is necessary to determine whether plaintiff's failure to appeal her termination pursuant to 5 C.F.R. Sec. 315.806 (1976) makes this action premature. It is hornbook law that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938). Nevertheless the rule admits of certain exceptions including when a particular administrative process such as an appeal is involved. *Cf. McKart v. United States,* 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969). Moreover when it is patently obvious that resort to administrative remedies would be futile, the rule does not serve its purpose. *See Glover v. St. Louis-S.F.R. Co.,* 393 U.S. 324, 330–331, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969). In the instant case the appeal procedure available to probationary employees is very limited. Unless the termination was based on one of the specified grounds there is no effective administrative procedure. The classic Catch-22 situation arises when a probationary employee is terminated for reasons other than:

1) marital status;
2) partisan political reasons not required by law;

3) discrimination based on race, color, religion, sex or national origin; or
4) improper discrimination because of physical handicap.

An appeal would be totally frivolous due to the limited jurisdiction provided and conversely, if the government's position is accepted, an action commenced in district court would be precluded because of failure to exhaust administrative remedies. The irony of this kind of situation was recognized recently by the United States Court of Appeals for the District of Columbia. In *American Federation of Government Employees v. Acree,* 155 U.S.App.D.C. 151, 475 F.2d 1289 (1973), the Court stated:

> In our judgment, it would be blinking reality to expect the Commission, in an adjudicatory proceeding, to hold an agency subject to its regulations to a higher standard of procedural protection than its own rules require. Nor do we think it likely that the Commission would act in advance of a court in overturning rules promulgated by itself and consistent with the applicable governing statute.

*Acree, supra,* at 1292. Clearly there are instances when the customary rationales for the exhaustion doctrine do not apply and its application becomes pointless. This is such a case.

■ Next the United States contends that failure to pursue the remedies available under the Privacy Act of 1974, 5 U.S.C. Sec. 552a, is tantamount to failure to exhaust administrative remedies. With this remarkable argument I cannot agree. The mere fact that other statutory remedies exist certainly does not entitle a defendant to select which theory a plaintiff must proceed under. *See Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). This would seem particularly true where, as here, the relief available pursuant to the statute is considerably less than desired. The Privacy Act of 1974 does not allow for reinstatement, back pay or compensatory damages. Merely choosing one legal theory over another does not run afoul of the exhaustion of administrative remedies doctrine.

The gravamen of this lawsuit relates to whether a probationary federal employee who is terminated under circumstances which put her reputation, honor or integrity at stake is entitled to notice and opportunity to be heard prior to termination. Any discussion of this issue necessarily begins with two recent companion cases decided by the United States Supreme Court, *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and *Perry v. Sinderman,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). In *Roth* the Court held

> that the Constitution does not require opportunity for a hearing before the non-renewal of a nontenured teacher's contract, unless he can show that the decision not to rehire him somehow deprived him of an interest in "liberty" or that he had a "property" interest in continued employment, despite the lack of tenure or a formal contract.

*Sinderman, supra,* 408 U.S. at 599, 92 S.Ct. at 2698. In determining whether due process requirements apply, one must look to the nature of the interest at stake to ascertain whether it falls within the protection of liberty and property afforded by the Fifth or Fourteenth Amendment. Although the terms "liberty" and "property" are incapable of precise definition, certain principles have emerged. It is well settled that incorporated in the concept of "liberty" is "the right of the individual to contract, to engage in any of the common occupations of life." *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1922). Although in *Roth* it was concluded that a nontenured teacher who was merely not rehired and suffered no stigma could not claim a deprivation of liberty, the Court warned that "[t]here might be cases in which a State refused to re-employ a person under such circumstances that interests in liberty would be implicated." *Roth, supra,* 408 U.S. at 573, 92 S.Ct. at 2707.

> The State, in declining to rehire the respondent, *did not make any charge against him that might seriously damage his standing and associations in his community.* It did not base nonrenewal of

his contract on a charge, for example that he had been guilty of dishonesty, or immorality. *Had it done so, this would be a different case.* For "(w)here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, *notice and an opportunity to be heard are essential."* (citations omitted)(emphasis added).

*Roth, supra,* at 573, 92 S.Ct. at 2707.

More recently, the Supreme Court discussed the due process considerations involved in the termination of a nonprobationary federal employee. The employee claimed a right to a trial-type hearing before an impartial officer before he could be removed from employment. In rejecting this position and sustaining the challenged statutory provisions of the Lloyd-LaFollette Act and the relevant Civil Service Commission regulations, the Court emphasized that a nonprobationary employee is allowed an appeal from the original agency decision. 5 C.F.R. Sec. 771.205 (1976). This process further allows for an evidentiary trial-type hearing. 5 C.F.R. Secs. 771.208, 771.210–771.212, 772.305(c) (1976). With this understanding the Court concluded that

> [s]ince the purpose of the hearing in such a case is to provide the person "an opportunity to clear his name," a hearing afforded by administrative appeal procedures after the actual dismissal is a sufficient compliance with the requirements of the Due Process Clause.

*Arnett v. Kennedy,* 416 U.S. 134, 157, 94 S.Ct. 1633, 1646, 40 L.Ed.2d 15 (1974). *Kennedy* is clearly distinguishable from the case at bar since under the regulations challenged by Churchwell no opportunity exists for her to clear her name. As succinctly noted by Justice White:

> Where there is a "taking" before a final determination of rights, as in some cases when the State seizes property, to protect one of the parties *pendente lite,* the Court has acted on the assumption that at some time a full hearing will be available, as when there is an attachment of property preliminary to resolution of the merits of a dispute. (citations omitted). The op-

portunity to defend one's property before it is finally taken is so basic that it hardly bears repeating.

*Kennedy, supra,* at 180, 94 S.Ct. at 1657. (White, J., concurring in part and dissenting in part). The opportunity to defend one's liberty is equally important and basic.

The Eighth Circuit has had occasion to analyze the *Roth, Sinderman* and *Kennedy* precepts. In *Greenhill v. Bailey,* 519 F.2d 5 (8th Cir. 1975), a medical student appealed his dismissal from the University of Iowa College of Medicine. Listed on a form, maintained by the University and made available to any school that Greenhill might subsequently apply to, was the comment that the dismissal was "due to Poor Academic Standing" apparently resulting from "[*l*]ack of intellectual ability or insufficient preparation." The school's action in "denigrating Greenhill's intellectual ability" was held to have deprived him of a significant interest in liberty. 519 F.2d at 8. Similarly in *Buhr v. Buffalo Public School District No. 38,* 509 F.2d 1196 (1974), the Eighth Circuit Court of Appeals dealt with the termination of a nontenured teacher. The Court found no deprivation of liberty in *Buhr* because the teacher's ability to secure another teaching position was not prejudiced. 509 F.2d at 1196. It is significant to note the Court's holding:

> We cannot accept this argument under the factual circumstances of this particular case. Clearly, nonrenewal standing alone does not constitute the deprivation of an interest in liberty. (citations omitted). On the other hand, where reasons for nonrenewal are announced publicly *or are incorporated into a record made available to prospective employers,* such reasons may indeed affect the dischargee's chances of securing another job. (citations omitted)(emphasis added).

*Buhr, supra,* at 1199.

■ Turning to the facts of this case, Churchwell was informed by letter that at least 6 cc's (sic) of a narcotic had vanished during the time when she was the only nurse on duty. One of the specific reasons given for termination was "irregularities in the inventory of controlled drugs." This is a serious accusation, especially when leveled at a registered nurse who has an obligation to exercise extreme care in handling and administering narcotic drugs. An affidavit by the Director of the Head Start Program in Sisseton, South Dakota, reveals that but for learning from Churchwell's former employer of plaintiff's termination for "drug errors", he would have employed Churchwell as a Health Nutrition Coordinator. This is precisely the stigma which *Roth* and *Bailey* held to be intolerable absent a hearing. Unlike the nonprobationary employee in *Kennedy,* the regulations do not afford plaintiff a hearing even after the termination. No opportunity to defend her reputation and good name is afforded.

The United States points the Court to *Casey v. Roudebush,* 395 F.Supp. 60 (D.Md. 1975). The plaintiff in *Roudebush* was a probationary federal employee terminated for duty in an exceedingly intoxicated condition and sleeping on the job. As would be the conclusion in the instant case, if it were an issue, the District Court found that Casey did not have a "property" interest as a probationary employee. Nevertheless the Court did conclude that Casey was entitled to "a prompt hearing before an administrative judge or other impartial hearing officer to determine whether the charges made against plaintiff were true . . . ." 395 F.Supp. at 63. Further, the Court stated that unless this hearing was promptly afforded, the Administrator of Veteran Affairs would be ordered to remove from Casey's personnel file all material relating to the reason for his termination. *Id.* at 63. Other recent cases recognize the importance of a hearing when a person's good name is at stake. *Velger v. Cawley,* 525 F.2d 334 (2nd Cir. 1975); *Lombard v. Board of Education,* 502 F.2d 631 (2nd Cir. 1974); *Wellner v. Minnesota State Junior College Board,* 487 F.2d 153 (8th Cir. 1973).

The United States motion for summary judgment is denied.

The Court concludes that partial summary judgment in favor of the plaintiff is appropriate. Under the facts of this case,

the actions of the defendants in terminating plaintiff's employment without an opportunity to be heard violate her right to due process of law as guaranteed by the Fifth Amendment to the United States Constitution. There are, however, several issues still in dispute which remain for ultimate resolution at the trial. For now the Court concludes:

1) That plaintiff is not entitled at this stage of the proceedings to reinstatement in her former position with the Public Service Hospital in Sisseton.

2) Defendants are ordered to conduct an appropriate administrative hearing before an administrative judge or other impartial hearing officer within thirty days of receipt of this Memorandum Decision. Should defendants fail to comply with this schedule, plaintiff's request for reinstatement with back pay will be granted.

3) Pending a written determination on the truth of the allegations contained in the termination letter of May 5, 1975, following said hearing defendants are enjoined from disseminating any information relating to the reasons for plaintiff's termination.

Counsel for the plaintiff is directed to prepare the appropriate order.