**Harriet FRAZIER, Appellant,**

v.

**The CURATORS OF the UNIVERSITY OF MISSOURI et al., Appellees.**

**No. 73–1759.**

United States Court of Appeals,
Eighth Circuit.

Submitted April 15, 1974.

Decided May 2, 1974.

Dana B. Badgerow, Biersmith & Badgerow, Kansas City, Mo., for appellant.

Marvin E. Wright, Columbia, Mo., for appellees.

Before MATTHES, Senior Circuit Judge, ROSS and WEBSTER, Circuit Judges.

MATTHES, Senior Circuit Judge.

By this appeal, we are again called upon to resolve a controversy between a member of the teaching profession and school authorities.[1] More specifically, in this case, Dr. Harriet Frazier, whom we shall designate throughout as plaintiff, formerly a nontenured assistant professor at the University of Missouri-Kansas City, seeks declaratory and injunctive relief and damages in the sum of $500,000. Named as defendants are the Curators of the University of Missouri; James C. Olson, Chancellor of the University of Missouri-Kansas City;[2] Edwin J. Westermann, Dean of the College of Arts and Sciences of the University; Robert M. Farnsworth, Chairman of the Department of English, College of Arts and Sciences of the University; and six professors or instructors of English in the College of Arts and Sciences of the University.

In her second amended complaint, plaintiff alleged that jurisdiction was premised on 42 U.S.C. §§ 1983, 1985(3); 28 U.S.C. §§ 1331, 1343(2), 2201, 2281, 2284, and the first, fifth and fourteenth amendments to the United States Constitution.

The case was submitted to the district court on stipulations, affidavits, depositions and other written material. On September 24, 1973, the court filed its findings of fact and conclusions of law, and entered an order based thereon dismissing plaintiff's action. She has appealed and presents several contentions in an effort to demonstrate that the court's judgment of dismissal cannot stand.

The core of the dispute is the failure of the University to offer tenure to plaintiff as a professor and in the position that she occupied. Instead, she was offered a terminal employment contract for the 1970–1971 academic year, but declined to accept it as more fully discussed below. The defendants have maintained from the inception of this litigation that plaintiff was terminated for permissible and legal reasons and that under the circumstances extant and the governing rules and regulations of the University they were under no mandate to afford her tenure status or to continue her employment. Conversely, plaintiff submits that the reasons assigned for the action taken by the University authorities were pretextual, and that she was refused continued employment because she exercised her first amendment privilege by criticizing and complaining of the conduct of one of her colleagues and of a student. Coupled with this contention is the argument that she was denied procedural and substantive due process.

Thus, it is apparent that a resume of the relevant circumstances is essential to a proper understanding of the controversy. Plaintiff was first employed by the University as an assistant professor of English for the 1967–1968 school year, a one year term, pursuant to the Academic Tenure Regulations established by the Board of Curators of the University. These regulations provided that

1. For cases decided by this court involving questions similar to those in issue here, see Watts v. Board of Curators, 495 F.2d 384 (1974); Birdwell v. Hazelwood School Dist., 491 F.2d 490 (1974); Scheelhaase v. Woodbury Central Comm. School Dist., 488 F.2d 237 (1973); Wellner v. Minnesota State Junior College Board, 487 F.2d 153 (1973); Gieringer v. Center School Dist. No. 58, 477 F.2d 1164, cert. denied, 414 U.S. 832, 94 S. Ct. 165, 38 L.Ed.2d 66 (1973); Fisher v. Snyder, 476 F.2d 375 (1973); Calvin v. Rupp, 471 F.2d 1346 (1973); Rozman v. Elliott, 467 F.2d 1145 (1972); Wilson v. Pleasant Hill School Dist., 465 F.2d 1366 (1972); Reed v. Board of Educ. of Parkway School Dist., 460 F.2d 824 (1972); Long v. Board of Educ. of City of St. Louis, 456 F. 2d 1058 (1972); Ahern v. Board of Educ. of School Dist. of Grand Island, 456 F.2d 399 (1972); Cooley v. Board of Educ. of Forrest City School Dist., 453 F.2d 282 (1972); Thomas v. Kirkwood Community College, 448 F.2d 1253 (1971).

2. For the purpose of this opinion, the term "University" refers to a branch of the University of Missouri located at Kansas City, Missouri.

holders of academic staff positions under term appointments shall have no rights of permanent or continuous tenure. * * * The non-reappointment of any appointee on term appointment shall carry no implication that either his work or his conduct has been unsatisfactory. For this reason it shall not be necessary for his dean or department chairman to provide him with any statement of causes or reasons for not recommending reappointment.

Thus it is clear that the regulations made no provision for a hearing on a decision to decline to reappoint a nontenured academic employee.

After her initial year of employment with the University, plaintiff was reappointed for successive one year terms for the 1968–1969 and 1969–1970 academic years.

Initially, the plaintiff's relations with her students and faculty colleagues were uneventful. But in the fall of 1968, plaintiff had several unpleasant encounters with a colleague, one Robert Smithey. Plaintiff appealed to several fellow faculty members and to the chairman of the department, Dr. French, but no affirmative steps were undertaken by anyone in the department to resolve the differences between plaintiff and Smithey.

In the spring of 1969 plaintiff had several violent or threatening confrontations with Arnold Stead, a student in one of her classes. Plaintiff was sufficiently disturbed by Stead's conduct toward her that she once again consulted with the department chairman. Dr. French was unreceptive, and plaintiff spoke with the Dean of Students, a colleague on the English faculty, and the Dean of Arts and Sciences, as well as telephoning the Chancellor of the University. Once again, no action on plaintiff's appeals was undertaken by anyone,

and there were no further episodes involving plaintiff and either Smithey or Stead.

In the late fall of 1969, a departmental faculty committee first considered whether plaintiff should be extended tenure, and thereby assured a permanent position on the English faculty of the University. Adverse comments were made during the meeting about plaintiff's frequent absence from class due to illness and about her "emotional appeals" to University officials outside the English faculty concerning her difficulties with Stead.

Nevertheless, the Tenure Committee postponed a final decision on plaintiff's continued employment at the University until April, 1970. At two meetings, on April 24 and 28, 1970, the Tenure Committee considered plaintiff's performance as a professor at the University. Various committee members expressed dissatisfaction about her teaching techniques, her behavior toward colleagues, and the general quality of her scholarship. Specifically, there were suggestions that the department required a scholar in plaintiff's field of specialty who possessed qualifications superior to those demonstrated by plaintiff. There is evidence that the plaintiff's appeals to higher University officials over the Stead matter were not discussed or considered by the committee at these April meetings.

The committee members voted to offer plaintiff a terminal employment contract providing that the 1970–1971 school year would be her final two semesters at the University. Although not required to do so by the University's tenure regulations, the Chairman of the Tenure Committee, Dr. Robert Farnsworth, notified plaintiff in writing of the reasons for the committee's decision to terminate her association with the University.[3]

---

3. The letter from Dr. Farnsworth to plaintiff stated in material part:

At your request I shall summarize in writing the discussion of the Tenure Committee which led to the Committee's vote to offer you a terminal contract for the school year 1970–71.

The Committee first considered your status last fall. There was at that time considerable question about your judgment and emotional balance stemming from your inability to meet your classroom obligations the previous spring and your emotional appeals to the Dean and the Chan-

This notification, dated April 29, 1970, offered the plaintiff the opportunity to appear before the committee to express her views on the decision. Such a meeting was arranged for the latter part of May, but the plaintiff declined to appear on the advice of counsel, who had been retained by her.

There was an exchange of letters between plaintiff and defendant Farnsworth between May 8, 1970, and September 4, 1970. On September 15, 1970, plaintiff's retained attorney wrote the following letter to the attorney representing the University:

This is to advise you that Dr. Harriet Frazier will not pursue the above-captioned action against U. M. K. C. Also, she does not intend to sign a contract to teach at the university.

However, Dr. Frazier does intend to seek employment elsewhere. Your regulations state that failure to obtain tenure does not blemish the teacher's record. Therefore, any letters of reference should not carry any derogatory information regading [sic] her failure to obtain tenure.

Nevertheless, this action was filed alleging that the plaintiff was denied due process since she was allegedly denied a fair hearing before the tenure committee on the termination of her employment and because the reasons stated by the committee for its decision were arbitrary and capricious.[4]

■ It is now firmly established that a nontenured teacher has no constitutional right to a statement of reasons or a hearing on a university's decision not to rehire him. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L. Ed.2d 548 (1972); Freeman v. Gould Special School District, 405 F.2d 1153 (8th Cir.), cert. denied, 396 U.S. 843, 90 S.Ct. 61, 24 L.Ed.2d 93 (1969). Consequently, the University tenure regulations were entirely proper, and plaintiff, a nontenured assistant professor, had no expectancy in continued employment which would allow her to insist upon a statement of reasons and a hearing as a constitutional right.[5]

cellor. However, it was then decided to defer judgment on your status until this spring, recognizing that this meant assuring you a contract for 1970–71. This meeting was the basis for the letter you received from Dr. French assuring you of a contract for next year.

The Committee met again on April 24th and 28th to discuss your status. The members of the Committee emphasized various points in reaching their collective decision. There was general recognition that you were adequately fulfilling your minimal responsibilities during this last year, but the Committee still had serious reservations about your effectiveness as a teacher and scholar suited to our particular needs. The student evaluations, while not harshly critical, seemed lukewarm. One committee member was particularly disturbed by the students describing the learning method in your Shakespeare classes as "rote memorization." This criticism was reinforced by committee members' testimony that they were unimpressed with your critical ability in informal discussions and in discussions arising from departmental duties. Some committee members feel that your critical approach is rather pedantic. It is concerned too frequently with insignificant scholarly minutiae and ignores central critical problems.

There was some feeling that a teacher of Shakespeare is in a key position in our department and that we need a person particularly in this area who will attract students to our program and who will win respect for critical scholarship.

As a general summary the committee recognizes that there is some evidence of teaching effectiveness and scholarly ability, but it does not consider your performance of sufficient strength to encourage you to think of becoming a permanent member of our department.

The members of the committee making this decision were Professors Aryanpur, Cappon, Farnsworth, Jaffe, McLeod, Ryan and Spatz.

We have agreed to hear your response to our decision. I would like to set the meeting for 9 a. m., May 14.

4. The attorney who represented plaintiff and wrote the above letter does not represent her in this action.

5. Plaintiff does not specifically rely upon the de facto tenure doctrine enunciated in Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), decided on the same

■ But here the Tenure Committee did provide plaintiff with a statement of reasons why the committee had resolved to recommend she be offered a terminal contract. As stated, plaintiff urges that the reasons set forth in the April 29 letter by Dr. Farnsworth are arbitrary, capricious and without basis in fact, and contends that due process prohibits her dismissal for such allegedly arbitrary reasons. It is settled doctrine, however, that a nontenured instructor may be dismissed provided the dismissal is not in fact based upon some constitutionally impermissible ground, such as racial or religious discrimination or retaliation for assertion of rights guaranteed by law or the Constitution. See Scheelhaase v. Woodbury Central Comm. School Dist., 488 F.2d 237 (8th Cir. 1973); Freeman v. Gould Special School District, *supra*. See also Harnett v. Ulett, 466 F.2d 113 (8th Cir. 1972).

■ We have weighed with care plaintiff's claim that despite the reasons enunciated in Dr. Farnsworth's letter of April 29, the terminal contract was in fact motivated by a constitutionally impermissible reason; namely, in reaction to the exercise of her alleged first amendment right in consulting with University officials for assistance with her difficulties with Smithey and Stead. Assuming her complaints to her superiors constituted the exercise of a protected first amendment right, we disagree that the ultimate action taken by the University was provoked by any complaints plaintiff may have registered. The burden was upon the plaintiff to demonstrate that the committee's action in recommending a terminal contract was for an impermissible reason. Cal-

vin v. Rupp, 471 F.2d 1346, 1349 (8th Cir. 1973); Wilson v. Pleasant Hill School District, 465 F.2d 1366, 1368–1369 (8th Cir. 1972). The plaintiff utterly failed to sustain this burden. Indeed, she offered no convincing evidence on this issue. Conversely, the district court's finding that plaintiff was dismissed for the reasons delineated in Dr. Farnsworth's letter and not in retaliation for her appeals to the Dean and Chancellor is supported by substantial evidence introduced by the defendants. Beyond cavil, the findings of the district court are to be left undisturbed unless clearly erroneous. Watts v. Board of Curators, 495 F.2d 384 (8th Cir. 1974). We find no rational basis for interfering with the court's findings.

In affirming, we. like the Tenth Circuit, echo the pronouncement of Judge Holtzoff in Greene v. Howard University, 271 F.Supp. 609, 615 (D.D.C.1967), rev'd in part, 134 U.S.App.D.C. 81, 412 F.2d 1128 (1969):

> * * * It would be intolerable for the courts to interject themselves and to require an educational institution to hire or to maintain on its staff a professor or instructor whom it deemed undesirable and did not wish to employ. For the courts to impose such a requirement would be an interference with the operation of institutions of higher learning contrary to established principles of law and to the best traditions of education.

See Jones v. Hopper, 410 F.2d 1323, 1329 (10th Cir. 1969).

Other points relied upon for reversal have been considered. They are without substance and do not merit discussion.

---

day the *Roth* opinion was filed. We detect, however, a veiled suggestion in plaintiff's brief that the *Perry* rationale does apply.

We reject such an implication for lack of any evidence to support such a theory.