Clifford E. BRUCE, Plaintiff,

v.

The BOARD OF REGENTS FOR the NORTHWEST MISSOURI STATE UNIVERSITY et al., Defendants.

No. 1676.

United States District Court,
W. D. Missouri,
St. Joseph Division.

June 10, 1976.

George M. Winger, William G. Levi, Smith, Schwegler, Swartzman & Winger, Incorporated, Kansas City, Mo., for plaintiff.

Duke W. Ponick, Jr., Morris, Foust, Beckett & Ponick, Kansas City, Mo., for defendants.

MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON ISSUE OF LIABILITY

JOHN W. OLIVER, District Judge.

## I.

This Section 1983 action by a non-tenured faculty member of Northwest Missouri State University presents questions controlled by principles stated in *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). The case pends on cross-motions for summary judgment on the issue of liability. The parties, in an exemplary manner, entered into a full and detailed stipulation of fact and further stipulated that for purposes of the pending cross-motions neither side desired to adduce or present any additional evidence.

We have carefully considered the excellent briefs of the parties and find and conclude that plaintiff's motion for summary judgment on the issue of liability should be granted for reasons we now state.

## II.

The undisputed relevant factual circumstances of this case are established by the stipulation of the parties. No material facts relating to the issue of liability are in dispute. We will briefly summarize the relevant and material facts necessary for the decision of that issue.

In September, 1966, plaintiff commenced employment as an Instructor in the Speech Department at Northwest Missouri State University. Thereafter, he was continued on one year employment contracts through the 1970–1971 academic year. In September of 1969 plaintiff applied for a sabbatical leave to work on his Ph. D. during the academic year 1971–72.

The provisions of the University's *Administrative Handbook,* revision July 1, 1970, regarding sabbatical leaves stated in relevant part:

1. In recognition of at least five years of continuous services, members of the academic and administrative faculty may, upon recommendation of the President and approval by the Board of Regents, be granted sabbatical leave not to exceed the equivalent of one academic year. Salary for this period will be one half of stipulated yearly salary or $4,500 whichever is less.

\*   \*   \*   \*   \*   \*

5. The person granted such leave shall agree to serve at least two more years on the faculty of Northwest Missouri State College, and shall give a note with proper security for the amount granted, said note to be cancelled at the end of the two

years of service required or at the death of its maker or upon his becoming permanently incapacitated or disabled. [P. Ex. 8, pp. 35–36]

On September 8, 1970, defendant Foster wrote to plaintiff advising that defendant Board [by its Resolution 3470] had on that date approved plaintiff's request for a sabbatical leave for the 1971–1972 academic year, with leave pay of $4,500, for the purpose of permitting plaintiff to continue his education toward the degree of Ph. D. at the University of Nebraska. [Stip. No. 40; P. Ex. 16; P. Ex. 65]

The University regarded the documents [P. Ex. 24 and 24A] and resolution [P. Ex. 16] concerning plaintiff's sabbatical leave as a "sabbatical contract." [Ex. D, p. 93, line 7, to p. 94, line 7; p. 118, line 23, to p. 119, line 15]

In October, 1969, plaintiff was made Acting Chairman of the Speech Department, and in November, 1969, plaintiff was promoted to Assistant Professor, effective February 1, 1970.

In addition to having his sabbatical leave approval by the Board of Regents in September, 1970, plaintiff also came up for consideration for tenure in that month. In accordance with the tenure procedures set forth in the *Handbook*, Robert Bohlken, the newly appointed chairman of plaintiff's department, polled the tenured members of the department and received a unanimous vote in favor of recommending plaintiff for tenure. Chairman Bohlken endorsed this recommendation in a letter sent to the Dean of Faculties on September 21, 1970.

Around September 23, 1970, however, a strong difference of opinion developed between plaintiff and Chairman Bohlken over course assignments. Any number of undisputed facts in regard to what happened to plaintiff's recommendation for tenure do no more than afford an explanation of why this case is being litigated rather than having been resolved under the established administrative procedures of the University. For example, it is clear from the stipulation that when the strong difference of opinion developed between Dr. Bohlken and the plaintiff "both men became very angry and upset." It is also clear that Dr. Bohlken took it upon himself in October, 1970, to obtain a return of the tenure recommendation he had earlier approved and transmitted to Dr. Small on September 21, 1970. Failing in that effort, Dr. Bohlken, acting outside the scope of any procedures authorized in the *Handbook*, nevertheless successfully prevailed upon Dr. Fulsom, another member of the department, to change his vote recommending plaintiff's tenure. Dr. Bohlken, having thus placed himself in a position to break what became a tie vote, did so, and thereafter advised Dr. Small, on October 20, 1970, of the result of the "second" tenure vote.

Without written notice or hearing to plaintiff, Dr. Bohlken recommended to Dr. Small on October 20, 1970, that plaintiff not be considered for tenure as he had originally recommended a month earlier. By November 12, 1970 the faculty in-fighting had escalated to such an extent that Dr. Bohlken formally requested the termination of employment of Mr. Clifford Bruce "effective June, 1971."

Although the 1970–1971 *Handbook* did not in any way authorize a "second" tenure vote, Dr. Bohlken's *ad hoc* procedures and recommendations were approved and acted upon by the defendants. Again without notice or hearing, the Board of Regents on November 23, 1970 passed a resolution to the effect that "Mr. Bruce's contract will not be renewed effective May 14, 1971" (subsequently amended on January 25, 1971 to read "effective December 22, 1971.") The Board also resolved in the same November 23, 1971 resolution that "the Board of Regents rescind the leave of absence granted for the 1971–1972 academic year from Mr. Clifford Bruce."

As will be apparent from our discussion of the applicable law, the most significant factual circumstance in this case relates to what is admitted to be plaintiff's "sabbatical contract" which was formally approved by the Board of Regents resolution on September 8, 1970, shortly before the differ-

ence of opinion over the reassignment of a course arose later that month.[1]

### III.

Apparent reluctance on the part of many school authorities to promulgate adequate regulations which afford procedural due process to a member of the faculty in connection with controversies relating to employment and other matters has forced courts to deal with litigation provoked by the absence of regulations which provide adequate notice and hearing under the circumstances.[2] The Supreme Court's decisions in the companion cases of *Roth* and *Sindermann,* however, provide definitive answers to the questions of law involved in this and similar cases. We shall first state the controlling principles of law of *Roth* and *Sindermann* before we make application of those principles to the relevant and material undisputed factual circumstances

---

1. While the factual circumstances in regard to Dr. Bohlken's successful *ad hoc* moves, which resulted in plaintiff being deprived of his recommendation for tenure, are not in dispute, it is not necessary that those circumstances be discussed in any further detail. Plaintiff's right to procedural due process in regard to his sabbatical leave contract is not dependent upon the factual circumstances relating to plaintiff's tenure recommendation.

2. Judge Matthes, in *Frazier v. Curators of University of Missouri,* (8th Cir. 1974) 495 F.2d 1149, 1150, after noting that the Eighth Circuit was "again called upon to resolve a controversy between a member of the teaching profession and school authorities," cited fourteen cases decided by the Eighth Circuit involving questions similar to those presented in *Frazier* and in this case between the years 1971 and 1974.

Voluntary action on the part of educational institutions, consistent with the recommendations of this Court en banc's suggestion in its *General Order on Judicial Standards, Procedure and Substance in Review of Student Discipline in Tax Supported Institutions of Higher Education,* (W.D.Mo. en banc, 1968) 45 F.R.D. 133, 148, in regard to the promulgation of adequate regulations and procedures on matters of student discipline have effectively eliminated substantially all student litigation in regard to that once troublesome area of law. This Court's *General Order* was recently cited with approval by the Supreme Court in *Goss v. Lopez,* 419 U.S. 565, 577, Fn. 8, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).

which we find and conclude establish plaintiff's right to summary judgment on the issue of liability.

*Sindermann* affirmed the Fifth Circuit's reversal of the district court's action granting summary judgment for the Board of Regents of a Texas junior college which had been grounded on the notion that the plaintiff's contract of employment had terminated and because "Odessa Junior College has not adopted the tenure system." 408 U.S. at 596, 92 S.Ct. at 2697. The Court of Appeals reversed, first, on the ground that despite plaintiff's lack of tenure, "the nonrenewal of his contract would violate the Fourteenth Amendment if it in fact was based on his protected free speech." *Id.* at 596, 92 S.Ct. at 2697.[3]

The Supreme Court noted that the Fifth Circuit, as a second ground for reversal, had concluded that "despite the respondent's

---

In *Roth,* the Supreme Court directed attention to the Report of Committee A on Academic Freedom and Tenure, Procedural Standards in the Renewal or Nonrenewal of Faculty Appointments, 56 A.A.U.P. Bulletin No. 1, p. 21 (Spring 1970), for consideration of whether, even though not constitutionally required, a hearing and statement of reasons for nonretention may nevertheless be appropriate and wise in public colleges and universities. [408 U.S. at 578–79, fn. 17, 92 S.Ct. 2701]

3. The Supreme Court concluded that the Fifth Circuit had correctly held that the "lack of a contractual or tenure right to re-employment, taken alone, [does not defeat a teacher's] claim that the nonrenewal of his contract violated the First and Fourteenth Amendments." 408 U.S. at 596, 92 S.Ct. at 2697. A First Amendment claim is pleaded in this case and is discussed by the parties, particularly in briefs filed when Judge Duncan had the case before him. Plaintiff's First Amendment claim, however, is not emphasized in the current briefs except in the parties' recently filed reply briefs. In any event, discussion of plaintiff's First Amendment claim, which cannot properly be described as frivolous, is unnecessary under the view we take of plaintiff's Fourteenth Amendment procedural due process claim. Compare *Hostrop v. Bd. of Jr. College Dist. No. 515,* (7th Cir. 1975) 523 F.2d 569, 573, cert. denied —— U.S. ——, 96 S.Ct. 1748, 48 L.Ed.2d 208, May 4, 1976, not yet officially reported. 44 U.S.L.W. 3624.

lack of tenure, the failure to allow him an opportunity for a hearing would violate the constitutional guarantee of procedural due process if the respondent could show that he had an 'expectancy' of re-employment." *Id.* 408 U.S. at 596, 92 S.Ct. at 2697. With some important caveats as to what the Fifth Circuit may have meant by use of the word and concept of "expectancy," the Supreme Court affirmed the general rationale of the procedural due process ground upon which the Fifth Circuit's reversal of the district court was based.[4] The Supreme Court commenced its discussion of a teacher's procedural due process rights in *Sindermann* by noting that although a teacher's "lack of formal contractual or tenure security in continued employment . . . is highly relevant to his procedural due process claim," the lack of either contractual security or tenure security "may not be entirely dispositive." *Id.* at 599, 92 S.Ct. at 2698.

■ It is thus clear at the outset that we cannot properly accept defendants' primary proposed conclusion of law which is based on defendants' contention that "plaintiff, as a non-tenured University professor on regular assignment had no property right or interest entitling him to due process of law . . . ."[5] The fact that plaintiff did not have tenure simply is not dispositive of this case. Defendants' implicit assumption to the contrary reveals the fundamental flaw in defendants' basic legal argument. In *Sindermann,* the Supreme Court summa-

rized its holding in *Roth* by stating that "the Constitution does not require opportunity for a hearing before the nonrenewal of a nontenured teacher's contract, *unless* he can show that the decision not to rehire him somehow deprived him of an interest in 'liberty' or that he had a 'property' interest in continued employment, despite the lack of tenure or a formal contract." [408 U.S. at 599, 92 S.Ct. at 2698.] (emphasis ours). *Roth,* on its facts, as the Supreme Court commented in *Sindermann,* involved a case which "the teacher had not made a showing on either point to justify summary judgment in his favor." *Id.* 408 U.S. at 599, 92 S.Ct. at 2698.

In *Sindermann,* the plaintiff alleged that the college had a *de facto* tenure program and that he and others had legitimately relied upon an unusual provision in the college's Faculty Guide to support his claim in that regard. The plaintiff in *Sindermann* also claimed legitimate reliance upon certain guidelines promulgated by the Coordinating Board of the Texas College and University System. The plaintiff in *Sindermann* thus "offered to prove that a teacher with his long period of service at this particular State College had no less a 'property' interest in continued employment than a formally tenured teacher at other colleges, and had no less a procedural due process right to a statement of reasons and a hearing before college officials upon their decision not to retain him." *Id.* at 601, 92 S.Ct. at 2699.

---

4. In regard to the use of the word "expectancy," the Supreme Court stated:

> We disagree with the Court of Appeals insofar as it held that a mere subjective "expectancy" is protected by procedural due process, but we agree that the respondent must be given an opportunity to prove the legitimacy of his claim of such entitlement in light of "the policies and practices of the institution." 430 F.2d at 943. [408 U.S. at 603, 92 S.Ct. at 2700.]

The Supreme Court, however, made clear in the next sentences that "Proof of such a property interest . . . would obligate college officials to grant a hearing at his request, where he could be informed of the grounds for his nonretention and challenge their sufficiency." It is also clear that such proof, standing

alone, would not afford a basis for immediate reinstatement. Questions relating to reinstatement need not be considered in this case for the reason plaintiff does not seek such relief.

5. Understandably, defendants' proposed conclusions of law made no suggestion whatever in regard to whether the Board of Regents had power to "rescind" plaintiff's sabbatical leave contract without affording plaintiff appropriate procedural due process. Defendants do not, however, ignore the problem of the sabbatical. On page 14 of their brief they argue that "Neither the resolution authorizing the sabbatical (P. Ex. 24) nor the sabbatical agreement itself (P. Ex. 24A) conferred any right of continued employment on the plaintiff." That argument is not tenable for reasons we shall later state in the text.

In considering the plaintiff's allegations and offer of proof, the Supreme Court stated that "we have made clear in *Roth, supra,* 408 U.S. at 577, 92 S.Ct. [2701], at 2709, that 'property' interests subject to procedural due process protection are not limited by a few rigid, technical forms," and that "Rather, 'property' denotes a broad range of interests that are secured by 'existing rules or understandings.' " The Supreme Court then enunciated the test for determining whether a person's interest in a benefit must be considered a "property" interest within the meaning of the Fourteenth Amendment by stating that:

A person's interest in a benefit is a "property" interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.

Controlling guidance in regard to how that test must be applied to the factual circumstances of a particular case is stated as follows:

A written contract with an explicit tenure provision clearly is evidence of a formal understanding that supports a teacher's claim of entitlement to continued employment unless sufficient "cause" is shown. Yet absence of such an explicit contractual provision may not always foreclose the possibility that a teacher has a "property" interest in re-employment. [*Id.* 408 U.S. at 601, 92 S.Ct. at 2699.]

*Sindermann,* in express reliance upon 3A *Corbin on Contracts,* §§ 561–572A (1960), which discusses the process by which agreements, though not formalized in writing, may nevertheless be considered as implied contracts, added that:

Explicit contractual provisions may be supplemented by other agreements implied from "the promisor's words and conduct in the light of the surrounding circumstances." *Id.* at § 562. And, "[t]he meaning of [the promisor's] words and acts is found by relating them to the usage of the past." *Ibid.*

The Supreme Court concluded in *Sindermann* that the teacher's allegations and his offer of proof was sufficient as a matter of law to have alleged "the existence of rules and understandings, promulgated and fostered by state officials, that may justify his legitimate claim of entitlement to continued employment absent 'sufficient cause.' " *Id.* 408 U.S. at 602–603, 92 S.Ct. at 2700.[6]

The factual focus of both *Sindermann* and *Roth* was on claims of nontenured teachers and the question of evidence necessary to establish the existence of a *de facto* system of tenure. The questions presented in those cases were therefore discussed in terms of tenure and the implications of the presence or absence of a system of tenure in the particular institutions involved. The legal tests stated and applied, however, are of much broader application and are based upon established constitutional principles which are applicable to factual circumstances as diverse as the procedural due process rights of the welfare recipients involved in *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); the procedural due process rights of a person on parole in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and the procedural due process rights of a student subject to ten day suspension involved in *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).[7] Nor is it new law which recognizes and applies the principle

---

6. Interestingly enough, after remand by the Supreme Court but before trial in the district court, Odessa College settled the case by paying plaintiff $48,000 in back pay and court costs. The college also shortly thereafter replaced its old policy on renewal with a formal tenure system. See Shulman, *Employment of Non-Tenured Faculty; Some Implications of Roth and Sindermann,* 51 Denver L.J. 215, 226 (1974).

7. *Goss v. Lopez,* appropriately stated that "it would be a strange disciplinary system in an educational institution if no communication was sought by the disciplinarian with the student in an effort to inform him of his defalcation and to let him tell his side of the story in order to make sure that an injustice is not done." [419 U.S. at 580, 95 S.Ct. at 739.]

that "[T]he Fourteenth Amendment, as now applied to the States, protects the citizen against the State itself and all of its creatures—Boards of Education not excepted." *West Virginia Board of Education v. Barnettee,* 319 U.S. 624, 637, 63 S.Ct. 1178, 1185, 87 L.Ed. 1628 (1943). *Roth,* stated the attributes of "property" which emerge from the Fourteenth Amendment procedural due process cases, involving but not limited to educational institutions, by concluding that:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.[8]

Of paramount importance, so far as this case is concerned, *Roth* construed earlier cases in the area of public employment and concluded that:

> In the area of public employment, the Court has held that a public college professor dismissed from an office held under tenure provisions, *Slochower v. Board of Education,* 350 U.S. 551 [76 S.Ct. 637, 100 L.Ed. 692], and college professors and staff members dismissed *during the terms of their contracts, Wieman v. Updegraff,* 344 U.S. 183 [73 S.Ct. 215, 97 L.Ed. 216], have interests in continued employment that are safeguarded by due process. [408 U.S. 576–577, 92 S.Ct. at 2709 (emphasis ours)].

*Roth* and *Sindermann* are cited in all four of the opinions written in *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). The question presented was whether a non-probationary federal Civil Service employee was entitled to a hearing before a dismissal "for such cause as will promote the efficiency of the service," as provided in the Lloyd-La Follette Act, 5 U.S.C. § 7501. Mr. Justice Rehnquist, joined by the Chief Justice and Mr. Justice Stewart, in a plurality opinion announcing the judgment of the Court, concluded as a matter of statutory construction that it was not necessary to reach the constitutional procedural due process questions which every other member of the Court considered. The plurality opinion concluded that "a hearing afforded by administrative appeal procedures *after* the actual dismissal is a sufficient compliance with the requirements of the Due Process Clause." *Id.* 416 U.S. at 157, 94 S.Ct. at 1646 (emphasis added).

Mr. Justice Powell, joined by Mr. Justice Blackmun, concurred in the result of the plurality opinion but based his conclusion on entirely different reasoning. He concluded that *Roth* and *Sindermann* provided the proper framework for constitutional analysis and stated that "Application of these precedents to the instant case makes plain that appellee is entitled to invoke the constitutional guarantee of procedural due process. Appellee was a nonprobationary federal employee, and as such he could be discharged only for 'cause.' 5 U.S.C. § 7501(a). The federal statute guaranteeing appellee continued employment absent 'cause' for discharge conferred on him a legitimate claim of entitlement which constituted a 'property' interest under the Fifth Amendment. Thus termination of his employment requires notice and a hearing." [*Id.* 416 U.S. at 166, 94 S.Ct. at 1650.][9]

**8.** *Roth* stated familiar Fourteenth Amendment procedural due process principles when it commenced the next following sentence of that opinion with the following:

> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—

rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. [408 U.S. at 577, 92 S.Ct. at 2709.]

**9.** Mr. Justice Powell stated that the approach of Mr. Justice Rehnquist's plurality opinion was "incompatible with the principles laid down in *Roth* and *Sindermann*" and suggested that the view expressed in the plurality opinion

Mr. Justice White stated that *Roth* and *Sindermann* "serve to emphasize that where there is a legitimate entitlement to a job, as when a person is given employment subject to his meeting certain specific conditions, due process requires, in order to insure against arbitrariness by the State in the administration of its law, that a person be given notice and a hearing before he is finally discharged." [*Id.* at 185, 94 S.Ct. at 1659.]

Mr. Justice Marshall, consistent with the head count made by Mr. Justice White, reiterated that "a majority of the Court rejects Mr. Justice Rehnquist's argument that because appellee's entitlement arose from statute, it could be conditioned on a statutory limitation of procedural due process protections." [10]

Although the result of *Arnett v. Kennedy,* denied the federal Civil Service employee the right to a hearing before discharge, it is apparent that the six Justices who reached the constitutional due process question all concluded that application of principles stated in *Roth* and *Sindermann* made it plain that the plaintiff in that case was entitled to invoke constitutional guarantees of procedural due process. The Justices who reached the constitutional question concluded that a federal statute conferred on the federal employee a legitimate claim of entitlement which must be considered a "property" interest under the Fifth Amendment and that termination of employment required notice and a hearing at some time. We are convinced that we must follow the rationale of the opinions of the Justice in *Arnett v. Kennedy* who reached the procedural due process question.

This case, quite unlike the factual circumstances involved in either *Roth* or *Sindermann,* involves the additional factual circumstance of what the defendants concede was a sabbatical leave contract. While it is true that Dr. Bohlken's insistence that his view prevail in regard to the strong difference of opinion which arose in connection with whether the plaintiff should teach the Articulation Disorders course for the coming semester, and while it is true that plaintiff's recommended tenure became a casualty in the academic warfare which followed, it is also true that plaintiff's sabbatical leave contract stood on a separate and independent set of factual circumstances. In connection with those independent circumstances, it is undisputed that defendants, by unilateral action, without any sort of notice and without affording plaintiff any sort of opportunity to be heard, effectively terminated plaintiff's interest in the sabbatical leave contract, a benefit which we find was based on mutually explicit understandings reflected by the submission of a proper application and confirmed by formal Board of Regents resolution.

Under the policies and procedures of the *Handbook,* which were made a part of the terms of plaintiff's appointment for each successive year including the 1970–71 academic year, even non-tenured faculty members could not be removed during the period of their contract except for sufficient cause after notice and the opportunity for hearing. The *Handbook* expressly incorporated the Missouri statutes applicable to removal of faculty or staff at the State colleges. It provided as follows:

Regarding the removal or suspension of tenured faculty and non-tenured faculty

"misconceives the origin of the right to procedural due process. That right is conferred, not by legislative grace, but by constitutional guarantee." *Id.* 416 U.S. at 166–167, 94 S.Ct. at 1650. Mr. Justice Powell added "While the legislature may elect not to confer a property interest in federal employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards. As our cases have consistently recognized, the adequacy of statu-

tory procedures for deprivation of a statutorily created property interest must be analyzed in constitutional terms." *Id.* 167, 94 S.Ct. at 1650.

10. Mr. Justice Marshall added that "it would amount to nothing less than a return, albeit in somewhat different verbal garb, to the thoroughly discredited distinction between rights and privileges which once seemed to govern the applicability of procedural due process." *Id.* at 211, 94 S.Ct. at 1672.

or staff during the period of their contract, the statutes governing the operations of the state colleges contain the following provisions:

Sec. 1. No president, professor or teacher shall be removed except for incompetency, neglect or refusal to perform his duties, dishonesty, drunkenness or immoral conduct; nor shall such president, professor or teacher be removed until after ten days' notice, in writing, stating the nature and causes of removal; and he shall have an opportunity to make a defense before the board by counsel or otherwise; and be allowed to introduce testimony which shall be heard and determined by the board.

Sec. 2. In every case of suspension or expulsion by the faculty the person suspended or expelled shall be allowed an appeal to the board from the decision of the faculty, and the board shall prescribe the manner and mode of proceeding in the matter of such appeal; but the decision of the board upon such appeal shall be final. (Mo.R.S.1959, 174.150)[11]

That statutory mandate was not followed in terminating plaintiff's employment during the period of the sabbatical contract.[12]

In this case, it is undisputed that the plaintiff had a written contract which provided for sabbatical leave. That contract, together with the policies and procedures of the *Handbook,* in our judgment, clearly established, to use the words of *Sindermann,* "a formal understanding that supports a teacher's claim of entitlement to continued employment unless sufficient 'cause' is shown." 408 U.S. at 601, 92 S.Ct. at 2699.

We expressly find that plaintiff had a legitimate claim of entitlement to the benefit of his sabbatical leave contract and that such benefit must be considered as a "property" interest within the meaning of the procedural due process clause of the Fourteenth Amendment. We therefore find and conclude that plaintiff had a constitutional right to a hearing to provide him with an opportunity to vindicate his claim to that interest. In the language of *Roth,* we find and conclude that plaintiff was wrongfully "dismissed during the term of [his] contract." 408 U.S. at 577, 92 S.Ct. at 2709.

### IV.

The Eighth Circuit, long before the Supreme Court's 1972 decisions in *Roth* and *Sindermann,* recognized that there was a material difference between a case involving a mere failure to reemploy a teacher and a case in which the educational institution sought to deprive the teacher of the benefits of an existing contract before the term of the contract expired. In *Freeman v. Gould Special Sch. Dist. of Lincoln County, Ark.,* (8th Cir. 1969) 405 F.2d 1153, a

---

11. The University implemented the statutory requirements by setting up a hearing procedure before the Faculty Hearing Committee with a right of appeal to the Board of Regents. While the Faculty Committee held two informal meetings, the plaintiff was never notified of those meetings, or afforded an opportunity to be heard. Indeed, his request for a hearing was, in fact, denied.

12. A faculty member on sabbatical leave continues as an employee of the University, certainly, where, as is true in this case, the faculty member takes sabbatical leave with pay to further his professional development and does not accept an appointment at another institution. Indeed, the American Association of University Professors has described this continuing relationship between the faculty member on leave and his institution, see *Statement of Principles on Leaves of Absence,* LVIII A.A.U.P. Bulletin 244–45 (Summer 1972).

In regard to whether a faculty member on sabbatical leave from Northwest Missouri State University is considered a member of the faculty, the faculty hearing committee's report to President Foster dated January 24, 1972, as set forth in plaintiff's admitted proposed finding No. 84, is apparently reflective and consistent with the usage of the past and the unwritten "common law" of this particular University. The faculty hearing committee reported that all members of the faculty committee were present "with the exception of James Saucerman, who is on sabbatical leave." It is quite clear that the members of the faculty hearing committee considered Dr. Saucerman as a member of the faculty committee even though he was in fact on sabbatical leave.

divided court held that under Arkansas law, a school board's right not to rehire a teacher was absolute, provided the refusal to rehire was not based on impermissible constitutional reasons, such as race, religion, or assertion of constitutionally guaranteed rights.

*Cooley v. Board of Education of Forrest City School Dist.,* (8th Cir. 1972) 453 F.2d 282, on the other hand, vacated the district court's judgment for the Board of Education in a case involving a midterm discharge of the teacher. The Court of Appeals recognized the facial factual similarity of *Freeman* with *Cooley,* but pointed out that "Rev. Cooley, unlike the Freeman-plaintiffs, was discharged in mid-year." The Court of Appeals described that additional factual circumstances as "a significant factual difference." *Id.* at 286. *Freeman* was therefore distinguished on its facts and *Cooley* concluded that "the nature of the individual interest at stake demands the traditional procedural protection of the Due Process Clause of the Fourteenth Amendment," holding that "a peremptory, midterm dismissal without notice of reasons and an opportunity to respond" violated that federally protected constitutional right. *Id.* at 287.[13]

█ Counsel have not cited any post *Roth-Sindermann,* Eighth Circuit cases involving an effort by an educational institution to attempt to alter an existing contractual relationship with a teacher during the term of the contract. However, *Hostrop v. Board of Junior College Dist. No. 515 etc., Ill. [Hostrop I]* (7th Cir. 1972) 471 F.2d 488;

and *Hostrop v. Bd. of Jr. College Dist. No. 515 [Hostrop II]* (7th Cir. 1975) 523 F.2d 569, cert. denied —— U.S. ——, 96 S.Ct. 1748, 48 L.Ed.2d 208, not yet officially reported, May 4, 1976, 44 U.S.L.W. 3624, were both decided after *Roth* and *Sindermann.* *Hostrop I* reversed the district court's dismissal of plaintiff's claim because it concluded that the allegations of plaintiff's complaint, if proven, would establish a denial of plaintiff's procedural due process rights as guaranteed by the Fourteenth Amendment. Under the facts there involved, the defendant junior college had agreed to employ the plaintiff as its president "under the terms of a series of employment contracts" until June 30, 1972. Plaintiff was summarily dismissed on July 23, 1970, without any hearing or opportunity to speak in his defense. In reversing, the Seventh Circuit held:

A person is deprived of property if the government extinguishes his legitimate claim of entitlement to his job. . . . A term of employment set by contract has been recognized as a property interest which the state cannot extinguish without conforming to the dictates of procedural due process. *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth,* 408 U.S. at 576–577, 92 S.Ct. 2701. The existence of such a contractually-established property interest obligates the Board to grant plaintiff a hearing where he can be fully informed of the reasons for his nonretention and challenge their sufficiency.[15] [14]

13. See also *Ahern v. Board of Education of Sch. Dist. of Grand Island,* (8th Cir. 1972) 456 F.2d 399, 402, in which the Court of Appeals expressly reiterated its holding in *Cooley.* In *Ahern,* the Eighth Circuit concluded that:

A school teacher dismissed for cause during the course of a school year is entitled constitutionally to (1) notice of the reason for dismissal and (2) a reasonable opportunity for a hearing at which he or she is able to give testimony and to confront and question adverse witnesses. [456 F.2d at 402]

14. Footnote 15, appended to the above quoted portion of *Hostrop I,* answers another argument made by the defendants in this case. On page 11 of its brief, defendants contend that no

federal jurisdiction is present in this case because "the very most that is actually involved herein is a claim for the breach of a sabbatical contract or agreement." In footnote 15, *Hostrop I* stated "The fact that plaintiff relies upon his employment contract to establish a property interest, worthy of protection through the due process clause does not mean that his only remedy is a contract action in state court. A civil rights action based on the deprivation of due process and a contract action to recover damages for a breach are independent remedies. The civil rights action based on deprivation of a property interest established by con-

After remand, the district court rendered judgment on the merits for the junior college after a nonjury trial. *Hostrop II* again reversed the district court, holding:

> We think plaintiff had a claim of entitlement amounting to a property interest within the meaning of *Board of Regents v. Roth, supra,* 408 U.S. at 577–578, 92 S.Ct. 2701, and *Perry v. Sindermann,* 408 U.S. 593, 601–602, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), even assuming that, as the District Court found, he deceived defendants by the manner in which he submitted the form for the new contract. [523 F.2d 574]

In remanding the case for a hearing on the issue of damages, the Seventh Circuit concluded that:

> The wrong done plaintiff was not the termination of his employment, for that has been determined to have been justified, cf. *Garcia v. Daniel,* 490 F.2d 290 (7th Cir. 1973), but the deprivation of his procedural due process right to notice and a hearing. Plaintiff is entitled to damages for that constitutional violation. Although the amount of damages for such an injury cannot be determined by reference to an objective standard, recovery of non-punitive damages for the deprivation

of intangible rights for which no pecuniary loss can be shown is not without precedent. Courts have traditionally assessed such damages for tortious injury. *Id.* at 579.

■ The Seventh Circuit's opinions in *Hostrop I* and *Hostrop II* are consistent with the results of the pre-*Roth-Sindermann* decisions by the Eighth Circuit, to which we have made reference. We are convinced that plaintiff was entitled to Fourteenth Amendment procedural due process protection in connection with the Board of Regents' effort to "rescind" his sabbatical leave contract. Plaintiff, like the plaintiff in *Hostrop II,* is entitled to recover damages for the wrong done plaintiff in this case.[15] While we do not reach the question of damages in this case, we indicate for the guidance of counsel that we generally agree with what the Seventh Circuit said on that subject in the first paragraph on page 580 of 523 F.2d, reporting *Hostrop II.*

## V.

For the reasons stated, we find and conclude that plaintiff has been denied procedural due process rights guaranteed him by

tract seeks vindication for the arbitrary manner in which the contract was breached." [*Id.* at 494]

**15.** We entertain some doubt that our determination that plaintiff is entitled to recover will come as much of a surprise to the authorities of the University. For it is clear from paragraph 60 of the stipulation, which quoted P. Ex. 17, that in his letter to President Foster of November 19, 1970, Dean Small was doubtful whether the Board had power to "revoke" plaintiff's sabbatical leave. Dean Small stated in that letter:

> It may be that you wish to discuss this matter with the Board and decide if the granting of the sabbatical leave can be revoked at this time. I do not feel and Dr. Bohlken agrees that we wish to have Mr. Bruce on our staff for two years after he comes back from his sabbatical leave. If there is any way that we can revoke the granting of the sabbatical leave at this time, I would recommend that we do so.

The Board of Regents on November 23, 1970, acting apparently without the advice of counsel, voted to "rescind," rather than "revoke,"

plaintiff's sabbatical leave contract. The legal effect of anticipatory breach of plaintiff's sabbatical leave contract is the same.

Nothing in the *Handbook* in effect at the time the Board of Regents attempted to "rescind" plaintiff's sabbatical leave made any reference to the existence of any power reserved to the Board of Regents to rescind a sabbatical leave contract. The briefs direct attention to an August 28, 1972 revision of the *Handbook* in which the defendants apparently amended the provisions relating to "Leave Regulations" by inserting on page 12 of the *Handbook* a provision which stated that:

> 8. The Board of Regents reserves the right to rescind leave approval any time prior to the time the leave begins.

It is unnecessary to determine whether such a revision may have in fact been made in the 1972 *Handbook* subsequent to the Board of Regents' action in connection with plaintiff's sabbatical leave. For it is clear that any alleged power to rescind plaintiff's sabbatical leave contract without notice or hearing may not be conferred by such *nunc pro tunc* action.

**570**

the Fourteenth Amendment in regard to defendants' unlawful anticipatory breach of plaintiff's sabbatical leave contract. Accordingly, it is

ORDERED (1) that plaintiff's motion for summary judgment on the issue of liability should be and the same is hereby granted. It is further

ORDERED (2) that defendants' cross-motion for summary judgment on the issue of liability should be and the same is hereby denied. It is further

ORDERED (3) that counsel for the respective parties shall appear for further pretrial conference at 1:30 p. m. on Tuesday, June 15, 1976, in Kansas City, in order that further proceedings may be directed in connection with the determination of the remaining issue of damages. Should that time prove to be inconvenient for counsel, they shall confer with the Court's law clerk in order that a mutually convenient time for conference be arranged.